```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARK WALKER                      :
                                 :
         Plaintiff               :  CIVIL ACTION
                                 :
    vs.                          :
                                 :
PHILADELPHIA PRESBYTERY HOME,    :  NO. 15-CV-6514
INC., Individually and/or t/a    :
PRESBY'S INSPIRED LIFE,          :
PHILADELPHIA HOMES AND           :
SERVICES FOR THE AGING,          :
Individually and/or t/a          :
PRESBY'S INSPIRED LIFE and       :
PRESBY'S INSPIRED LIFE           :
                                 :
         Defendants              :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                        **October 19, 2016**

This employment discrimination action is now before the Court on motion of Defendant for the entry of summary judgment in its favor on all of the claims against it.  For the reasons set forth in the paragraphs which follow, the motion shall be granted.

**Factual Background**

On July 21, 2014, Plaintiff began working as a temporary employee for Defendant, a company which owns and operates several long term residential and skilled nursing facilities for the elderly in the suburban Philadelphia region.  Plaintiff was hired to do data entry and audits of human resources files and it was

anticipated that his employment would last for a period of between 4 and 10 weeks. Although Plaintiff worked at several of Defendant's locations, the majority of his time was spent at its skilled nursing facility in Broomall, Pa., where he was overseen by Marina Hacking, who was the Interim Nursing Home Administrator until the permanent Administrator, Rachael DeCecco, returned from maternity leave in mid-September, 2014.

In August 2014, Plaintiff became aware of two permanent job openings for which he believed himself to be well-qualified. Plaintiff informed Marina Hacking of his interest in the Central Supply Coordinator position, though according to Plaintiff, she advised him that he would "be a better fit for the Admissions Liaison Assistant position at Broomall due to his wonderful customer service skills." (Pl's Complaint, ¶ 13). Plaintiff subsequently applied for both positions on September 15 and September 19, 2014 but was interviewed for neither. His temporary employment concluded on September 26, 2014 without an offer of permanent employment. (Complaint, ¶s 14-18). A few weeks later, Plaintiff learned that the Admissions Liaison position had been filled by a white female and he thereafter filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et. seq.*, 42 U.S.C. §1981, *et. seq.,* and the Pennsylvania Human Relations Act,

43 P.S. §951, *et. seq.* ("PHRA"). He received a right to sue letter on October 2, 2015. (Complaint, ¶ 21). Discovery in this matter has now closed and Defendant has moved for the entry of judgment in its favor as a matter of law.

### **Summary Judgment Standards**

Under Fed. R. Civ. P. 56(a),

> A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

In reading this rule, it is clear that summary judgment is appropriately entered only when the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Willis v. UPMC Children's Hospital of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015). A genuine issue of material fact is one that "affects the outcome of the suit under the governing law" and which could lead a reasonable jury to return a verdict in favor of the nonmoving party. Id.(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In considering a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d

Cir. 2013).  "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(quoting Wetzel v. Tucker, 139 F.3d 380, 383, n.2 (3d Cir. 1998)).  In response, and "to prevail on a motion for summary judgment, 'the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the non-movant.'" Burton, supra,(quoting Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)).  "In an employment discrimination case, the court must ascertan 'whether there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff'" bearing in mind that "'conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat summary judgment.'" LaRochelle v. Wilmac Corp., Civ. A. No. 12-CV-5567, 2016 U.S. Dist. LEXIS 133135 at *23 -*24 (E.D. Pa. Sept. 27, 2016)(quoting Hanks v. Temple University Health Sciences Center, 829 F.2d 437, 440 (3d Cir. 1987) and Taylor v. Cherry Hill Board of Education No. 02-3738, 85 Fed. Appx. 836, 839, 2004 U.S. App. LEXIS 424 (3d Cir. Jan. 12, 2004)).  Likewise, "disagreement with the defendant's decisions is insufficient as a matter of law, to survive summary

judgment." Inella v. Lenape Valley Foundation, 152 F. Supp. 3d 445, 461 (E.D. Pa. 2015).

## **Discussion**

In Counts I, II and III of his Complaint, Plaintiff avers that Defendant's failure to interview or offer him the Admissions Liaison Assistant position constituted unlawful race and/or gender discrimination in violation of Title VII, Section 1981 and the PHRA. As a general rule, claims under the PHRA and §1981 are interpreted coextensively with and analyzed under the same framework as claims under Title VII.[1]  Fausch v. Tuesday Morning,

---

[1]  Indeed, all three statutes are intended to outlaw discrimination and the language of the PHRA and Title VII is similar. Section 1981 directs that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981(a).

The PHRA provides in relevant part that:

> [i]t shall be an unlawful discriminatory practice, ... for any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal ... to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required. ...

43 P.S. §955(a).

Under Title VII, 42 U.S.C. §2000e-2(a)(1), it is

Inc., 808 F.3d 2018, 213 (3d Cir. 2015); Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 267-268 (3d Cir. 2010).  Because the standards for addressing these claims is the same, our discussion and analysis of all three counts of the complaint proceeds simultaneously.  See, e.g., Barnes v. Nationwide Mutual Insurance Co., No. 14-1771, 598 Fed. Appx. 86, 89, n.3, 2015 U.S. App. LEXIS 1038, *8, n.3 (3d Cir. Jan. 23, 2015).

There are two principal theories under which an employment discrimination plaintiff may make out a claim: the pretext theory set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) or the mixed-motive theory set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).  Under McDonnell Douglas, the complainant must initially show a *prima facie* case of discrimination by establishing: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite his qualifications, he was rejected; and (iv) that, after his

---

an unlawful practice for an employer ... to fail to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

And, under §2000e-2(m),

an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even if other factors also motivated the practice."

rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications or that another, not in the protected class, was treated more favorably.  Young v. UPS, 135 S. Ct. 1338, 1345, 191 L. Ed. 2d 279, 288-289 (2015); McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824; Scheidemantle v. Slippery Rock University, 470 F.3d 535, 539 (3d Cir. 2006).  In the event that a *prima facie* case is shown, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  McDonnell Douglas, supra. "If the employer meets this burden, the presumption of intentional discrimination disappears but the plaintiff can still prove disparate treatment by offering evidence that the employer's explanation is pretextual." Raytheon Co. v. Hernandez, 540 U.S. 44, 49, n.3, 124 S. Ct. 513, 517-518, n.3, 157 L. Ed.2d 357 (2003)(quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000)).  In proving pretext and to survive summary judgment, the plaintiff must demonstrate "that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."  Lapaz v. Barnabas Health System, No. 15-1773, 2015 U.S. App. LEXIS 21816, 634 Fed. Appx. 367, 370 (3d Cir. Dec. 16, 2015)(quoting Jones v. School District of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999)).  "One approach is to point to evidence 'that the employer

treated other, similarly situated persons not of his protected class more favorably.'" Id,(quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)).  Another way to show evidence of disparate treatment is to "show that a comparator was similarly situated to the plaintiff 'in all relevant respects.'" Id,(quoting Keystone Redev. Partners LLC v. Decker, 631 F.3d 89, 109 (3d Cir. 2011)).

In a so-called "mixed motives case," where it becomes apparent that the employment decision was a mixture of legitimate and illegitimate motives, the plaintiff is charged with the initial burden of showing that a protected trait was a "substantial factor" underlying the decision. Price Waterhouse v. Hopkins, 490 U.S. at 247, 109 S. Ct. at 1788, 1789; Makky v. Chertoff, 541 F. 3d 205, 213 (3d Cir. 2008).  To meet that burden, "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" Desert Palace, Inc. v. Costa, 539 U.S. 90, 101, 123 S. Ct. 2148, 2155, 156 l. Ed. 2d 84 (2003)(quoting 42 U.S.C. §2000e-2(m)).  Direct evidence of discrimination is not required; circumstantial evidence can be enough.  Id.; Kost v. Department of Public Welfare, Civ. A. No. 07-2404, 2011 U.S. Dist. LEXIS 144882 at *22 (E.D. Pa. Dec. 16, 2011).  "And if the plaintiff meets his burden, then the

defendant must demonstrate, by a preponderance of the evidence, that it would have come to the same decision without considering the protected trait." Kost, 2011 U.S. Dist. LEXIS at *23 (citing Desert Palace and Price Waterhouse, both supra).

"Under either theory of discrimination, the plaintiff must establish that [his] protected status was a factor in the employer's challenged action." Connelly v. Lane Construction Corp., 809 F. 3d 780, 788 (3d Cir. 2016). "The difference is in the degree of causation that must be shown: in a 'mixed motive' case, the plaintiff must ultimately prove that her protected status was a 'motivating' factor, whereas in a non-mixed-motive or 'pretext' case, the plaintiff must ultimately prove that her status was a 'determinative' factor." Id.

In this case, Plaintiff succeeds in making out a *prima facie* case under the McDonnell Douglas framework as to one of the two positions for which he applied: (1) he is an African-American male (2) who has an Associates degree in Specialized Business and a Bachelor's degree in Organizational Development and was therefore qualified for both the Admissions Liaison and Central Supply Coordinator positions; (3) despite his qualifications, he was never interviewed for either job and (4) the Admissions Liaison position was subsequently filled by someone not in his

protected class - a Caucasian female.[2] (Exhibits "C," pp. 69-71, "F,""G," "H," "L," "M," "N," "Q," to Plaintiff's Response and Memorandum in Opposition to Defendant's Motion for Summary Judgment).

In response, Defendant submits that it decided not to offer Plaintiff a permanent position because it found his performance while he was working for it in his temporary capacity to be poor and because the other candidates, including the one who eventually filled the position was more qualified.[3] There is evidence on the record to support these assertions. Several of Plaintiff's co-workers and supervisors testified that while employed in the temporary human resources/data entry position, Plaintiff spent a lot of his time away from his desk talking on his cell phone (which was forbidden) and talking to other staff members. In addition, Plaintiff didn't seem to be getting much work done very quickly and there were numerous errors in the work that he did - particularly with entry of employee names and social security numbers. (Exhibit "A" to Defendant's Brief in Support of Motion for Summary Judgment, Depositions of Dana

---

[2] The applicant chosen to fill the Central Supply Coordinator position was an African-American male and indeed Plaintiff appears to be pursuing this action as to the Admissions Liaison position only. (Plaintiff's Exhibit "P" and Defendant's Exhibit "A," Dep. of Mark Walker, p. 144).

[3] The Admissions Liaison position was subsequently filled by an African-American female following the resignation of the white female who initially was offered and took the position that Plaintiff was seeking. (Plaintiff's Exhibit "A", Dep. of Michelle Bryk, pp. 70-72; Defendant's Exhibit "I").

Manzo, Michelle Bryk, Rachael DeCecco and Marina Hacking). The white female candidate who was offered the Admissions Liaison job also had a Bachelor's degree but was employed at another senior living community where she had given tours, answered admissions questions and fulfilled general receptionist duties, so Ms. DeCecco found her qualifications to be a good fit for the position. Thus, we find that Defendant has sufficiently rebutted Plaintiff's *prima facie* case and the burden shifts back to the plaintiff to establish that these reasons are just a "pretext" for discrimination.

On this point, Plaintiff offers virtually no proof whatsoever. In addition to relying on the fact that Defendant had employed him in his temporary capacity for the full ten week period, Plaintiff's only other evidence comes from his own deposition testimony that he had informed Ms. Hacking of his interest in the Admissions Liaison position and that when he asked her what was going on with the position, she asked whether he had spoken with Rachael DeCecco. When he told her that he hadn't, Ms. Hacking told him that she would have Ms. DeCecco call him, but she never did, he was never interviewed and the job was given to a white female whom he did not know. (Defendant's Exhibit "A," Walker Dep. at pp. 145-147; Plaintiff's Exhibit "A," Walker Affidavit). Again, to raise a factual dispute as to discrimination, the plaintiff "must point to some evidence,

direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Ugorji v. N.J. Environmental Infrastructure Trust, No. 12-2751, 529 Fed. Appx. 145, 151, 2013 U.S. App. LEXIS 12265 (3d Cir. June 18, 2013)(quoting Burton, 707 F.3d at 427). Plaintiff's subjective belief that Ms. Hacking's remarks and Ms. DeCecco's failure to call or interview him are evidence of discrimination, even when coupled with the duration of his temporary employment simply are not enough to sustain his burden. We therefore find that his Title VII, PHRA and §1981 claims fail under McDonnell Douglas.

We reach the same conclusion under the mixed-motives rubric of Price Waterhouse. Although Plaintiff has submitted evidence that of the four people to hold the Admissions Liaison position, since its creation in late 2013 or early 2014, none has been an African-American male, there is no evidence at all that this is anything other than a coincidence or that the fact that he is an African-American man was a substantial or motivating factor in Defendant's decision to neither interview nor offer him the position. In the absence of any other evidence, we are constrained to conclude that Plaintiff likewise fails to make the requisite showing of mixed motives to withstand summary judgment.

For these reasons, the Defendant's motion shall be granted in conjunction with the annexed order.